UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LINDA RICHARD

VERSUS

WAL-MART STORES, INC., ET AL.

CIVIL ACTION

NO. 17-285-EWD (CONSENT)

## **RULING AND ORDER**[1]

Before the court is a Motion for Summary Judgment[2] filed by defendant, Wal-Mart Inc. f/k/a Wal-Mart Stores, Inc. ("Defendant"). Plaintiff, Linda Richard ("Plaintiff"), has filed an opposition,[3] and Defendant has filed a reply.[4] For the reasons set forth herein, the Motion for Summary Judgment is **DENIED**.

### I.   Background

In this personal injury action, Plaintiff alleges she sustained injuries and damages "when suddenly and without warning she slipped and fell on a puddle of water near the produce and freezer sections" of Defendant's store.[5] Plaintiff alleged in her Petition for Damages that "[t]he puddle of water that caused the fall appeared to be leaking from a nearby freezer or produce cooler."[6] However, Plaintiff testified in her deposition that while her fall occurred "close to the

---

[1] On July 3, 2017, the parties filed a Consent to Proceed before the United States Magistrate Judge. R. Doc. 11. On July 5, 2017, the District Judge entered an Order of Reference referring this matter to the undersigned "for the conduct of all further proceedings and the entry of *Judgment* in accordance with 28 U.S.C. 636(c) and the foregoing consent of the parties." R. Doc. 12.

[2] R. Doc. 22.

[3] R. Doc. 25.

[4] R. Doc. 43. In addition to supporting memoranda, Local Rule 56 requires a Motion for Summary Judgment to "be accompanied by a separate, short, and concise statement of the material facts" that the movant contends are undisputed. Likewise, a party opposing summary judgment must also include, along with its opposition, "a separate, short and concise statement of the material facts as to which the opponent contends there exists a genuine issue to be tried." Local Rule 56. Here, Defendant filed a Statement of Uncontested Facts. R. Doc. 22-2. Plaintiff filed Responses to Defendant's Statement of Uncontested Material Facts in addition to her Opposition. R. Doc. 26.

[5] R. Doc. 1-1, ¶ 3.

[6] R. Doc. 1-1, ¶ 4.

freezer," she didn't "know if it was leaking from the freezer…."[7] Plaintiff testified that she slipped on what appeared to be water, but that she did not have any information to suggest how the water came to be on the floor or how long it was there, nor did she have any information suggesting that a Wal-Mart employee caused the water to be on the floor, or that a Wal-Mart employee was aware of the fact that there was water on the floor prior to her fall.[8] Plaintiff further testified that after the fall, she saw "a couple of streaks of water on the floor,"[9] but that she did not notice any track or buggy marks through the area.[10] Relying on Plaintiff's deposition testimony, Defendant argues that Plaintiff "has not and cannot produce any evidence that Walmart created or had actual or constructive notice of the substance on the floor."[11] Because Plaintiff cannot establish this necessary element of her claim under the Louisiana premises liability statute, La. R.S. § 9:2800.6, Defendant contends summary judgment is proper.

Plaintiff opposes summary judgment based primarily on video surveillance of the area of the accident. Plaintiff argues that the surveillance video clearly shows two Wal-Mart employees pulling a large pallet immediately before the accident, the pallet striking a display located in the exact area where Plaintiff fell, and the two employees "scrambling around picking up items off of the ground that had fallen off of the pallet and picking up some items that had fallen off of the display."[12] Plaintiff reasons that this video creates a question of fact as to whether Defendant

---

[7] R. Doc. 25-5, p. 72:18-24.
[8] R. Doc. 25-5, pp. 67:17-68:8.
[9] R. Doc. 25-5, p. 66:11-12.
[10] R. Doc. 25-5, p. 67:6-12.
[11] R. Doc. 22-1, p. 3.
[12] R. Doc. 25, pp. 1-2.

2

actually created the hazardous condition or had constructive knowledge of the condition (because the employees should have seen any such condition when they were picking up the area).[13]

## II. Law and Analysis

### A. Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[14] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[15] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[16] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[17] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[18] Summary judgment is appropriate in any case where

---

[13] *See*, R. Doc. 25, p. 2 ("These employees were in the exact area of the fall just before the fall. Wal-Mart policy and procedure and the testimony of assistant manager, Sonita Odoms, and assistant manager Susan Shuff, proves that these two Wal-Mart employees should have **NOT ONLY** noticed the hazardous condition on the ground, but they should have cleaned up the hazardous condition immediately or stood by the hazardous condition until it could be cleaned up.").

[14] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[15] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

[16] *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

[17] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[18] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.

3

the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.[19] In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[20]

### B. The Louisiana Merchant Liability Statute

Because the Court's subject matter jurisdiction is based on diversity, Louisiana substantive law applies,[21] and Louisiana substantive law "determines which facts are material."[22] Louisiana Revised Statute § 9:2800.6 governs negligence claims brought against a merchant.[23] The statute provides, in pertinent part:

> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

---

[19] *Little*, 37 F.3d at 1075.

[20] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

[21] *Erie R. Co. v. Thompkins*, 304 U.S. 64, 78-80 (1938).

[22] *Littlefield v. Forney Independent School Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).

[23] *See*, *Davis v. Wal-Mart Stores, Inc.*, 774 So. 2d 84, 89 (La. 2000).

The Louisiana Supreme Court has held that "[b]ecause the statute is clear and unambiguous and contains no provision for shifting the burden to the defendant to prove his lack of culpability…it is the plaintiff's burden to prove each element of her cause of action under La. R.S. 9:2800.6(B)."[24] Here, as noted above, Defendant argues that summary judgment is proper because Plaintiff cannot establish that Defendant either created the hazardous condition or had actual or constructive notice of the condition.

### 1. A Genuine Issue of Material Fact Exists Regarding Whether Defendant Created the Condition

With respect to a showing that Defendant created the hazardous condition, "there must be proof that the merchant is directly responsible for the spill or other hazardous condition."[25] Here, the Court has reviewed the video surveillance and finds that a factual issue exists regarding whether Defendant created the hazardous condition.[26] Although the video is not as "clear" as Plaintiff suggests, on summary judgment, the undersigned must review the facts and inferences in the light most favorable to the non-moving party.[27] The video shows two individuals with a pallet passing through the same area in which Plaintiff fell.[28] Plaintiff correctly points out that it appears

---

[24] *White v. Wal-Mart Stores, Inc.*, 699 So. 2d 1081, 1082 (La. 1997).

[25] *Ross v. Schwegmann Giant Super Markets, Inc.*, 734 So.2d 910, 913 (La. App. 1 Cir. 1999).

[26] Although the surveillance video is enough to raise an issue of fact sufficient to withstand summary judgment, the quality of the video, as well as the numerous assumptions that have to be made (not the least of which is that the two individuals in the video are Defendant's employees), make this a close call. However, because controlling precedent requires that a court view the evidence in favor of the nonmovant, the Court finds that such factual issues are more properly considered by the jury. *See e.g., Star Financial Services, Inc. v. Cardtronics USA, Inc*., 882 F.3d 176, 179 (5th Cir. 2018) ("On summary judgment, a court must view evidence in the light most favorable to the nomovant and draw all reasonable inferences in the nonmovant's favor.")

[27] *International Shortstop, Inc.*, 939 F.2d at 1263.

[28] During Plaintiff's deposition, Plaintiff agreed that she fell on the right side of the aisle and "where the guys were seen with the boxes before the incident were over on the left by the table." R. Doc. 25-2, pp. 66:18-67:1. Based on the Court's review of the video surveillance, it is not entirely clear that whatever fell from either the pallet or the table fell on a side "opposite" to where Plaintiff fell, nor is it clear that the objects that the two individuals picked up were only on the opposite side of the area of Plaintiff's fall. *See also*, R. Doc. 25-5, p. 103:4-13 (wherein Plaintiff agreed that the water she saw on the floor was on the opposite side of the aisle from where the boxes were that fell but that, based on her viewing of the surveillance video, it "looked like it was in the area from where the video was because the fall was like right here and it looked like the boxes was like right here, not too far."). In any event, "claimed

that the pallet strikes a display, and that the two individuals stop what they are doing to pick up things from the floor and return them to either the display or the pallet itself. Although the two individuals in the video have not been positively identified, it appears to the Court that they both are wearing khaki pants and dark, possibly blue, shirts. During the deposition testimony of Ms. Sonita Odoms, one of Defendant's assistant managers, Ms. Odoms testified that such clothes are normally worn by Wal-Mart employees and that she would assume that the two individuals were Wal-Mart employees if that was what they were wearing.[29] Given that the surveillance video

---

inconsistencies between the video footage and other evidence [such as testimony]…are appropriate subjects for cross-examination at trial, but do not conclusively establish that a rational trier of fact could not find for Plaintiff." *Fuselier v. Wal-Mart Stores, LLC*, Civil Action No. 17-173, 2018 WL 1630428, at * 5 (M.D. La. April 4, 2018).

[29] R. Doc. 25-3. The exact exchange during Ms. Odoms' deposition was as follows:

> Q. So first of all, by looking at this video and where they are, do you believe that's two Walmart employees pulling a cart of some type of product?
>
> A. No. I know it's a pallet of some type, but I don't know if that's Walmart associates.
>
> Q. Okay. That's what I'm going to ask you, and I'm going to see if there is any way as we look through. Do you see how it looks like he has dark blue on or some dark-colored shirt on as he – it appears to be – he is picking up things that have fallen or doing something in this little end aisle right here?
>
> A. Uh-huh.
>
> Q. Are there other vendors or people who would be pulling a pallet like that throughout the store?
>
> A. Yes.
>
> Q. Who would that -- like, kind of who -- what kind of people?
>
> A. It could be Coca-Cola, Pepsi, Frito Lay…
>
> Q. So that's kind of what I want to get to, is – all right. So they are over there. It looks like on the video that they are dealing with this pallet. It looks like to me that they have a dark blue shirt on and khaki pants. Is that clothes – are those clothes normally worn by Walmart employees?
>
> A. Yes.
>
> Q. Okay. If he has on dark blue and khakis, I mean, would you say –
>
> A. From a distance, I would assume.
>
> Q. -- that they are Walmart employees?
>
> A. Yes, sir.

R. Doc. 25-3, pp. 74:2-75:10.

arguably shows two Wal-Mart employees bumping into the display table and thereafter picking up things less than a minute prior to Plaintiff's fall in the same area, the Court finds an issue of fact exists as to whether Defendant created the hazardous condition.[30]

Defendant argues that "Plaintiff's mere speculation that the water on the floor came from the box dropped by the Walmart employee is insufficient to defeat Walmart's motion for summary judgment."[31] Defendant relies heavily on *Williams-Ball v. Brookshire Grocery Co.*[32] to support its position that speculation as to the source of the water is insufficient to defeat summary judgment.[33] As an initial matter, it appears that plaintiff's claims in *Williams-Ball* were dismissed by the trial court following a bench trial.[34] Further, the plaintiff in *Williams-Ball* – who testified during trial that she slipped and fell on a clear liquid that looked like egg – argued, *inter alia*, that the merchant created the hazardous condition based on surveillance video showing a grocery store employee stocking eggs in the area where the incident occurred 45 minutes prior to the fall.[35] The

---

[30] *Compare*, *Davis*, 171 So.3d at 993 (finding that a factual issue as to whether defendant created the hazardous condition precluded summary judgment where plaintiff slipped on what appeared to be kitty litter (arguably used to soak up fluid spills in defendant's gas station parking lot) because it was "a reasonable inference that it was the merchant, and not a customer or stranger, who put the substance on its parking lot surface to remedy an oil slick" and whether the merchant had actually done so was "dependent upon how a fact-finder" credited competing testimony regarding who was working for defendant on the night of the accident and defendant's cleanup procedures), *with Ross*, 734 So.2d at 913 (finding there was no genuine issue of material fact where there was "no evidence that would establish that the crab salad found its way onto the floor because of an act by a Schwegmann employee" since the condition that caused plaintiff's fall was a portion of crab salad "some ten to twelve feet" from the sampling station such that "the overwhelming implication is the crab salad was dropped by a customer."). *See also*, *Fuselier*, 2018 WL 1630428, at * 5 (denying summary judgment based on defendant's argument that plaintiff could not carry her burden of proving defendant had actual or constructive notice of the hazardous condition and explaining that video footage created an issue of fact for trial because, "[v]iewed in the light most favorable to Plaintiff, the video shows several store patrons looking at or side-stepping the area where Plaintiff fell, as well as a child scuffing his feet against the floor in that area" and therefore "[a] jury might reasonably infer from the unusual amount of attention paid to that area of the floor by several patrons over several minutes that there was a spill on the floor in that area that existed from some period of time before Plaintiff's fall.").

[31] R. Doc. 22-1, p. 6.

[32] 198 So. 3d 195 (La. App. 2 Cir. 2016).

[33] *See*, R. Doc. 22-1, pp. 5-6.

[34] *See*, West's Jury Verdicts – Louisiana Reports, 2015 WL 10044884 (La. Dist. Ct.) (Verdict and Settlement Summary).

[35] 198 So.3d at 197.

7

surveillance video did not show the employee spilling anything on the ground or dropping a carton of eggs, but it did show the employee "setting a box down in the area of the fall and dropping a piece of cardboard a few feet away."[36] During 45-minute period between stocking and plaintiff's fall, "over 15 people, including several with shopping carts, traversed directly over or adjacent to the fall location" and not one of them "stopped to look at anything on the floor, slipped, or appeared to have any trouble navigating the area,"[37] and despite the period of time, the testimony of witnesses confirmed that plaintiff slipped in something that appeared "fresh."[38] Here, in contrast to *Williams-Ball*, video surveillance shows what appears to be two of Defendant's employees hitting a display and thereafter picking up in the area of Plaintiff's fall almost immediately prior to the fall. As explained above, the Court finds that a jury might reasonably infer that Defendant created the hazardous condition based on such surveillance video.[39]

### 2. A Genuine Issue of Material Fact Exists Regarding Whether Defendant Had Constructive Notice of the Condition

Likewise, the undersigned finds that there is a genuine issue of material fact regarding whether Defendant had constructive notice of the condition. La. R.S. § 9:2800.6(C)(1) defines

---

[36] *Id*. at 199.

[37] *Id*. at 200.

[38] *Id*.

[39] Defendant also cites *Bearb v. Wal-Mart Louisiana*, 534 Fed. Appx. 264 (5th Cir. 2013) (per curiam), wherein the court rejected plaintiff's speculation that defendant created the condition because it resulted from either a leaking skylight or wet shopping carts. In contrast to *Bearb*, the Fifth Circuit recently reversed a district court's order granting summary judgment where plaintiff alleged that she had slipped and fallen on water that had leaked from a negligently maintained roof. *Dehotel v. Wal-Mart Louisiana*, 850 F.3d 742 (5th Cir. 2017). Plaintiff in *Dehotel* claimed that the Wal-Mart store at which the accident occurred had been plagued by a chronically leaking roof, and there was evidence indicating that roof had been leaking on the day of the accident, that defendant had known that "new leaks" were an issue, and that – based on expert testimony – the roof was losing its ability to prevent leaks. The Fifth Circuit explained that "[a] useful contrast can be drawn between the evidence here and the evidence in *Bearb*," and noted that in *Bearb*, the "only evidence that a leaky skylight created a puddle on the floor was 'speculation and [the plaintiffs'] own unsubstantiated statements." 850 F.3d at 747. In reversing summary judgment, the *Dehotel* court noted that it was not finding that Wal-Mart created the hazard but was instead only permitting a jury to find that Wal-Mart created the hazard. *Id*. at 748. Here, in light of the video surveillance and the requirement that this Court draw reasonable inferences regarding what the video shows in favor of Plaintiff at this stage of these proceedings, the undersigned finds that this situation is more closely akin to *Dehotel* than *Bearb*.

8

"constructive notice" to mean that "the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition."

As explained above, the video surveillance shows (presumably) two Wal-Mart employees picking up in the area where Plaintiff's fall occurred immediately prior to the accident. The parties agree that Plaintiff slipped on a clear liquid substance, likely water,[40] and Plaintiff argues based on Defendant's own policies and procedures that these two employees "should have **NOT ONLY** noticed the hazardous condition on the ground, but they should have cleaned up the hazardous condition immediately or stood by the hazardous condition until it could be cleaned up."[41] In her deposition, Ms. Odoms agreed that if these employees were pulling a cart in the same vicinity as the accident, it would be a violation of Defendant's policies for the employees to "not locate that water."[42] Based on the video surveillance, and drawing all reasonable inferences regarding what the video shows in favor of Plaintiff at this stage of these proceedings, the fact that two of Defendant's employees were picking up in the area of the accident immediately prior to Plaintiff's

---

[40] *See*, R. Doc. 22-1, p. 7 ("Plaintiff cannot meet her burden of showing that Walmart had constructive knowledge of the clear liquid substance on the floor, believed to be water."); R. Doc. 25, p. 1 (Plaintiff "slipped and fell on a slip-inducing foreign substance, later found to be water….").

[41] R. Doc. 25, p. 2.

[42] *See*, R. Doc. 25-3, pp. 79:19-80:8 (Q. "The first thing I want to say is that Walmart has a policy and procedure that you're walking though the store, you're to be looking for spills?" A. "True." Q. "That would include when these two guys are pulling a cart throughout the store?" A. "Yes." Q. "And so if they are pulling that cart in the same vicinity where that – assume for me water is right there – for them not to locate that water, that would be a violation of Walmart's policy to be – always be on the lookout for hazards as you're walking throughout the store?" A. "Yes.").

fall raises a genuine issue of material fact as to whether Defendant had constructive notice of the condition prior to the accident.[43]

**III. Conclusion**

For the reasons set forth herein, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment[44] filed by defendant, Wal-Mart Inc. f/k/a Wal-Mart Stores, Inc. is **DENIED**.

Signed in Baton Rouge, Louisiana, on September 25, 2018.

*[signature: Erin Wilder-Doomes]*

**ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE**

---

[43] *Compare*, *Evans v. Winn-Dixie Montgomery, LLC*, 177 So.3d 386, 393 (La. App. 5 Cir. 2015) (affirming summary judgment in favor of defendant where plaintiff fell in puddle of standing liquid near the meat section of defendant's store and explaining that "had the water in fact leaked from the shopping cart…the water would only then have been on the floor for one-and-a-half minutes prior to plaintiff's fall. There is no indication that any employee passed that area" in that one-and-a-half minute timeframe "or that Winn-Dixie was in any way provided notice of the water…."), *with Blackman v. Brookshire Grocery Co.*, 966 So. 2d 1185, 1190 (La. App. 3 Cir. 2007) ("We agree that the presence of a merchant's employee(s) near the condition does not, in and of itself, constitute constructive notice of the condition. That being said, the presence or absence of such employee(s) in the vicinity of an unsafe condition is certainly a significant factor to be considered in determining whether a merchant had constructive notice. Super One's floor care and maintenance policy dictated that as a required part of their daily duties, all employees were to be alert to any unsafe conditions and to constantly inspect the floors as they worked and moved about the store. Certainly one could assume that if more employees are working near a certain area, the probability that any unsafe condition in that area could be identified and remedied is increased."). *See also*, *Tate v. Outback Steakhouse of Florida*, 203 So.3d 1075, 1079 (La. App. 1 Cir. 2016) (distinguishing *Sheffie v. Wal-Mart Louisiana, LLC*, 134 So.3d 80, 84 (La. App. 1 Cir. 2014, "where surveillance video evidence revealed five different employees walking by the area where the claimant slipped in water, and the court found that a genuine issue of material fact existed as to whether there had been a sufficient length of time that the merchant should have discovered the hazardous condition. We are not faced with any similar set of facts here. In this case, [plaintiff] did not present any evidence that anyone noticed, or should have noticed, the presence of the clear liquid substance on the floor at any time prior to her fall.").

[44] R. Doc. 22.